TROUTMAN SANDERS LLP
Terrence R. McInnis (#155416)
terrence.mcinnis@troutmansanders.com
Monique M. Fuentes (#205501)
monique.fuentes@troutmansanders.com
Peter R. Lucier (#246397)
peter.lucier@troutmansanders.com
5 Park Plaza, Suite 1200
Irvine, CA  92614-8592
Telephone:  (949) 622-2700
Facsimile:  (949) 622-2739

TROUTMAN SANDERS LLP
Malte L. L. Farnaes (#222608)
malte.farnaes@troutmansanders.com
550 West B Street, Suite 400
San Diego, CA  92101-3599
Telephone: (619) 235-4040
Facsimile:  (619) 231-8796

*Attorneys for Plaintiff*
*Continental Casualty Company*

FILED

09 MAY 12  PM 3: 48

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

UNITED STATE DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, an Illinois Corporation,<br><br>Plaintiff,<br><br>v.<br><br>WEST COAST PROPERTY CONSULTANTS, INC., a California Corporation, and QUALITYBUILT.COM, INC., a California Corporation,<br><br>Defendants. | Case No. 09 CV 1031 W CAB<br><br>**COMPLAINT FOR DECLARATORY RELIEF, EQUITABLE INDEMNITY, EQUITABLE CONTRIBUTION** |

1012229v2

**COMPLAINT**

Plaintiff Continental Casualty Company ("Continental") brings this Complaint against defendants West Coast Property Consultants, Inc. ("West Coast") and QualityBuilt.com, Inc. ("QualityBuilt") (collectively, the "Defendants"). Continental is informed and believes and therefore alleges as follows:

## INTRODUCTION

1. This is an action by Continental seeking a declaration concerning the rights and obligations of the parties under a policy of insurance in connection with the lawsuit captioned *QualityBuilt.com v. Olague, et al.*, No. GIC 855108 (San Diego County Super. Ct.) (the "*QualityBuilt.com* action"), as well as equitable indemnity or contribution from West Coast for amounts paid by Continental for which coverage was not afforded.

2. In this Complaint, Continental seeks, *inter alia*, a judgment declaring that 1) Continental has no obligation under its policy to indemnify West Coast or satisfy the judgment entered against West Coast in the *QualityBuilt.com* action; 2) that Continental had no duty to defend and has no on-going duty to defend West Coast in the *QualityBuilt.com* action; and 3) that Continental recover from West Coast those amounts paid by Continental in defense of the *QualityBuilt.com* action for which coverage is or was not available under the policy and for which Continental is entitled recoup.

## THE PARTIES

3. Plaintiff Continental is an insurance company incorporated under the laws of the State of Illinois with its principal place of business in Chicago, Illinois.

4. Continental is informed and believes, and thereon alleges, that West Coast is a California corporation with its principal place of business in San Diego, California.

5. Continental is informed and believes, and thereon alleges, that QualityBuilt is a California corporation with its principal place of business in Poway, California.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity between parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

1012229v2

- 2 -

**COMPLAINT**

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-8592

TROUTMAN SANDERS LLP
3 PARK PLAZA
SUITE 1200
IRVINE, CA 92614-8592

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since a substantial part of the events or omissions giving rise to the claims at issue occurred in this District.

## FACTUAL BACKGROUND

### The Policy

8.     Continental issued Professional Liability and Pollution Incident Liability Insurance Policy Number 11-410-39-74 to West Coast Property Consultants Inc. for the September 1, 2005 to September 1, 2006 Policy Term (the "Policy"). Policy Declarations Items 1 and 3. Attached as Exhibit A hereto is a true and correct copy of the Policy.

9.     Subject to the terms and conditions of the Policy, as set forth more fully therein and as applicable to the present dispute, the Policy's Coverage Agreements provide coverage only for amounts West Coast becomes legally obligated to pay "as a result of … **a wrongful act.**" Policy Section I.A.

10.     The Policy defines a **"wrongful act,"** as

> an error, omission or other act that causes liability in the performance of **professional services** for others by **you** or any person or entity, including joint ventures, for whom **you** are liable. A **wrongful act** cannot arise from dishonest, fraudulent, malicious, or criminal conduct committed by **you** or at **your** direction or with **your** prior knowledge.

Policy Section III.T. **"You"** or **"your"** is defined to include the **"Named Insured."** Policy Section III.U. West Coast is the **Named Insured** in the Policy. Policy Section III.J and Declarations Item 1.

11.     The Policy defines **"professional services"** as "those services that **you** perform for others on behalf of a **Named Insured** in **your** practice as an architect, engineer, land surveyor, landscape architect, construction manager, scientist or technical consultant." Policy Section II.Q.

### The *QualityBuilt.com* Action

12.     On or about October 7, 2005, QualityBuilt filed the *QualityBuilt.com* action against Jesse Olague and West Coast. On or about July 25, 2006, a third amended complaint ("TAC") was filed in the *QualityBuilt.com* action. A true and correct copy of the TAC, excluding any exhibits thereto, is attached hereto as Exhibit B.

1012229v2

- 3 -

**COMPLAINT**

13.     Mr. Olague reached a settlement with QualityBuilt and was dismissed from the lawsuit, with prejudice, in or about November 2008.

14.     The TAC in *QualityBuilt.com* alleged, *inter alia*, that QualityBuilt was engaged in risk management and quality assurance services for residential and commercial builders of new construction and renovations to real property. The TAC alleged that West Coast was a direct competitor of QualityBuilt. Allegedly, QualityBuilt developed proprietary checklists for quality assurance inspections. Mr. Olague was purportedly a field representative for QualityBuilt. Mr. Olague allegedly signed employment agreements with QualityBuilt which purportedly required him to maintain as confidential QualityBuilt's trade secret information and obligated him to return to QualityBuilt all documents related to QualityBuilt upon his employment termination. In his capacity as a field representative, Mr. Olague was purportedly provided with, and had access to, among other things, QualityBuilt's checklists. In or about September 2003, Mr. Olague resigned from his position with QualityBuilt and was allegedly hired by West Coast. Allegedly, Mr. Olague disclosed QualityBuilt's proprietary information to West Coast and West Coast purportedly used QualityBuilt's confidential and proprietary information to unfairly compete with QualityBuilt. The TAC asserted causes of action against West Coast for misappropriation of trade secrets and unfair competition. The TAC sought, among other things, an amount necessary to prevent the unjust enrichment of West Coast.

**West Coast Tenders the QualityBuilt.com Action to Continental**

15.     West Coast tendered the *QualityBuilt.com* action to Continental for coverage under the Policy. By letter dated February 9, 2006, Continental agreed to defend West Coast and Mr. Olague in the *QualityBuilt.com* action, subject to a full reservation of rights. Continental paid their defense costs, in excess of the Policy's $25,000 deductible, subject to a full reservation of rights.

**Judgment is Entered Against West Coast in the QualityBuilt.com Action**

16.     On or about September 5, 2008, the *QualityBuilt.com* action proceeded to trial against West Coast only.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-8592

1012229v2

- 4 -

**COMPLAINT**

1    17.    At the conclusion of the trial, and following deliberations, the jury returned a

2    special verdict finding that (1) QualityBuilt's checklists were trade secrets, (2) West Coast

3    misappropriated two of QualityBuilt's checklists; (3) West Coast's misappropriation of the

4    checklists was a "substantial factor" in causing West Coast to be "unjustly enriched"; (4) the

5    amount of "unjust enrichment obtained" by West Coast from one checklist was $1,713,529.01

6    and from the other checklist was $3,000; and (5) by "clear and convincing evidence," West Coast

7    "willfully and maliciously misappropriated [QualityBuilt's] Trade Secrets."

8    18.    Following a second phase of the trial, conducted as a bench trial, the trial court

9    declined to award punitive damages or impose injunctive relief.

10    19.    On March 2, 2009, the trial court entered Judgment incorporating the jury's

11    findings and awarding $1,716,529.01 with interest thereon at the rate of ten percent per annum

12    from the date of the entry of the judgment until paid, and attorneys' fees and costs, if applicable,

13    to be determined by filed motions (the "Judgment"). A true and correct copy of the Judgment is

14    attached hereto as Exhibit C. On or about April 30, 2009, the trial court denied West Coast's

15    motion for new trial and motion for judgment notwithstanding the verdict.

16    20.    As of the time of the filing of this Complaint, the trial court has not yet ruled on

17    QualityBuilt's motion for fees and costs.

## COUNT I

### (Declaratory Relief – Against All Defendants)

21    Continental repeats and incorporates by reference the allegations in paragraphs 1

21    through 20 of the Complaint.

22    22.    The Policy, subject to its terms and conditions as more fully set forth in the Policy,

23    provides coverage only for amounts West Coast becomes legally obligated to pay "as a result of

24    … a **wrongful act**." Policy Section I.A.

25    23.    The Policy's definition of "**wrongful act**" provides that "[a] **wrongful act** cannot

26    arise from dishonest, fraudulent, malicious, or criminal conduct committed by **you** or at **your**

27    direction or with **your** prior knowledge." Policy Section III.T.

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1200
IRVINE, CA 92614-8592

1012229v2                          - 5 -

**COMPLAINT**




24.     The Judgment includes a finding (by clear and convincing evidence) that West Coast "maliciously misappropriated [QualityBuilt's] Trade Secrets." It is this conduct – the malicious misappropriation of QualityBuilt's trade secrets – that forms the basis for the Judgment and the monetary award to QualityBuilt.

25.     Because the Judgment finds that West Coast acted maliciously in misappropriating QualityBuilt's trade secrets, the *QualityBuilt.com* action, and the amounts awarded in the Judgment, are not the result of a "wrongful act" as defined in the Policy, and so do not fall within the scope of the Policy's Coverage Agreements. Policy Section I.A.

26.     An actual and justiciable controversy exists between Continental and the Defendants regarding Continental's obligations under the Policy with respect to the *QualityBuilt.com* action and the Judgment entered therein. West Coast maintains that coverage is afforded under the Policy for the *QualityBuilt.com* action and the Judgment. Upon information and belief, QualityBuilt may seek to recover its Judgment from the Policy proceeds and will contend that coverage for the Judgment is afforded under the Policy. Continental, on the other hand, contends that coverage is not available under the Policy for the *QualityBuilt.com* action or the Judgment by reason of the fact that the conduct giving rise to the action and Judgment was not a "wrongful act" within the meaning of the Policy.

27.     By virtue of the foregoing, Continental is entitled to a judgment declaring that coverage is not afforded under the Policy for the *QualityBuilt.com* action or the Judgment and that Continental therefore has no obligation to satisfy the Judgment or indemnify West Coast for the Judgment or any settlement thereof.

## COUNT II

### (Declaratory Relief – Against All Defendants)

28.     Continental repeats and incorporates by reference the allegations in paragraphs 1 through 27 of the Complaint.

29.     As set forth above, the Policy, subject to its terms and conditions as more fully set forth in the Policy, provides coverage only for amounts that West Coast becomes legally obligated to pay "as a result of … a **wrongful act**." Policy Section I.A.

1012229v2                                    - 6 -

**COMPLAINT**

TROUTMAN SANDERS LLP
3 PARK PLAZA
SUITE 1200
IRVINE, CA 92614-8592



30.     The Policy issued to West Coast is a "Professional Liability" policy. As such, it defines **"wrongful act,"** in relevant part, as "an error, omission or other act that causes liability in the performance of **professional services** for others by **you** or any person or entity, including joint ventures, for whom **you** are liable." Policy Section III.T.

31.     The Policy defines **"professional services"** as "those services that **you** perform for others on behalf of a **Named Insured** in **your** practice as an architect, engineer, land surveyor, landscape architect, construction manager, scientist or technical consultant." Policy Section II.Q.

32.     West Coast's misappropriation of trade secrets of its competitor, QualityBuilt, does not constitute a **"wrongful act"** because the misappropriation of trade secrets was not an act committed "in the performance of **professional services** for others." Because the misappropriation of trade secrets does not constitute a **"wrongful act"** within the meaning of the Policy, the *QualityBuilt.com* action does not fall within the Policy's Coverage Agreements. Accordingly, there is no coverage, nor was there even the potential for coverage under the Policy, for the *QualityBuilt.com* action or the Judgment.

33.     An actual and justiciable controversy exists between Continental and the Defendants regarding Continental's obligations under the Policy with respect to the Judgment entered in the *QualityBuilt.com* action. West Coast maintains that coverage is afforded under the Policy for the Judgment. Upon information and belief, QualityBuilt may seek to recover its Judgment from the Policy proceeds and will contend that coverage for the Judgment is afforded under the Policy. Continental, on the other hand, contends that coverage is not available under the Policy for the Judgment and that it is not obligated to satisfy the Judgment under the Policy.

34.     By virtue of the foregoing, Continental is entitled to a judgment declaring that coverage is not afforded under the Policy for the *QualityBuilt.com* action or the Judgment and that Continental therefore has no obligation to satisfy the Judgment or indemnify West Coast for the Judgment or any settlement thereof.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-8592

## COUNT III

### (Declaratory Relief - Against All Defendants)

35.    Continental repeats and incorporates by reference the allegations in paragraphs 1 through 34 of the Complaint.

36.    California Insurance Code § 533 precludes coverage under any policy of insurance for "loss caused by the wilful act of the insured."

37.    The Judgment entered in the *QualityBuilt.com* action found, by clear and convincing evidence, that West Coast "willfully and maliciously misappropriated" QualityBuilt's trade secrets.

38.    Pursuant to Section 533, Continental is not liable under the Policy for the Judgment or any settlement that may be reached in the *QualityBuilt.com* action by reason of the fact that West Coast's conduct was found to be willful and malicious.

39.    An actual and justiciable controversy exists between Continental and the Defendants regarding Continental's obligations under the Policy with respect to the Judgment entered in the *QualityBuilt.com* action.  West Coast maintains that coverage is afforded under the Policy for the Judgment.  Upon information and belief, QualityBuilt may seek to recover its Judgment from the Policy proceeds and will contend that coverage for the Judgment is afforded under the Policy.  Continental, on the other hand, contends that coverage is not available under the Policy for the *QualityBuilt.com* action or the Judgment and that it is not obligated to satisfy the Judgment under the Policy.

40.    By virtue of the foregoing, Continental is entitled to a judgment declaring that coverage is not afforded under the Policy for the *QualityBuilt.com* action or the Judgment and that Continental therefore has no obligation to satisfy the Judgment or indemnify West Coast for the Judgment or any settlement thereof.

## COUNT IV

### (Declaratory Relief – Against All Defendants)

41.    Continental repeats and incorporates by reference the allegations in paragraphs 1 through 40 of the Complaint.

**COMPLAINT**

42.     Under applicable law, amounts a party is required to pay or disgorge as unjust enrichment for ill-gotten gains are not insurable.

43.     The Judgment found that West Coast willfully and maliciously misappropriated QualityBuilt's trade secrets, and that misappropriation was a substantial factor in causing West Coast to be unjustly enriched.  The Judgment awarded $1,716,529.01, plus post-judgment interest, solely for "unjust enrichment."

44.     The award for West Coast's unjust enrichment gained from its willful and malicious misappropriation of QualityBuilt's trade secrets is uninsurable as a matter of law. Because the amounts awarded to QualityBuilt as unjust enrichment are uninsurable, any costs or fees awarded to QualityBuilt in connection with the Judgment are likewise not covered under the Policy.  Accordingly, Continental is not liable under the Policy for the Judgment or any settlement thereof.

45.     An actual and justiciable controversy exists between Continental and the Defendants regarding Continental's obligations under the Policy with respect to the Judgment entered in the *QualityBuilt.com* action.  West Coast maintains that coverage is afforded under the Policy for the Judgment.  Upon information and belief, QualityBuilt may seek to recover its Judgment from the Policy proceeds and will contend that coverage for the Judgment is afforded under the Policy.  Continental, on the other hand, contends that coverage is not available under the Policy for the Judgment and that it is not obligated to satisfy the Judgment under the Policy.

46.     By virtue of the foregoing, Continental is entitled to a judgment declaring that coverage is not afforded under the Policy for the Judgment and that Continental therefore has no obligation to satisfy the Judgment or indemnify West Coast for the Judgment or any settlement thereof.

## COUNT V

### (Declaratory Relief – Against West Coast)

47.     Continental repeats and incorporates by reference the allegations in paragraphs 1 through 46 of the Complaint.

**COMPLAINT**

48.     As set forth above, coverage is not afforded under the Policy for the *QualityBuilt.com* action, the Judgment, or for the amounts sought in the *QualityBuilt.com* action because (a) West Coast's malicious conduct giving rise to its liability in the lawsuit was not a "wrongful act" that would fall within the scope of the Policy's Coverage Agreements; (b) the actual or alleged misappropriation of trade secrets giving rise to the *QualityBuilt.com* action is not an act committed "in the performance of **professional services** for others," and so is not a "wrongful act" that would fall within the scope of the Policy's Coverage Agreements; (c) West Coast's willful and malicious conduct is uninsurable pursuant to California Insurance Code § 533; and/or (d)  the unjust enrichment that forms the basis of the Judgment is not insurable under applicable law.

49.     The provision of the Policy setting forth Continental's duty to defend provides, subject to the Policy's other terms and conditions, that Continental has "the right and duty to defend any **claim** against **you** seeking amounts that are payable under the terms of this Policy. . ." Policy Section I.C. The amounts sought in the *QualityBuilt.com* action, and awarded under the Judgment, are not payable under the terms of the Policy.

50.     Because coverage is not afforded under the Policy for the *QualityBuilt.com* action, for the amounts sought in the *QualityBuilt.com* action, or for the Judgment entered therein, Continental had no duty to defend the *QualityBuilt.com* action and has no on-going duty to defend West Coast in the *QualityBuilt.com* action.

51.     By virtue of the foregoing, Continental is entitled to a judgment declaring that it had no obligation and has no continuing obligation under the Policy to defend West Coast in the *QualityBuilt.com* action, including no obligation to defend West Coast on any appeal thereof.

52.     Continental is further entitled to a judicial determination, judgment and award that it is entitled to and shall recoup those amounts paid or advanced by Continental under the Policy in defense of the *QualityBuilt.com* action pursuant to Continental's reservation of rights.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1200
IRVINE, CA 92614-8592

1012229v2

- 10 -

**COMPLAINT**

1

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1200
IRVINE, CA 92614-8592

## COUNT VI

### (Equitable Indemnity – Against West Coast)

53.     Continental repeats and incorporates by reference the allegations in paragraphs 1 through 52 of the Complaint.

54.     Continental has paid substantial attorneys' fees and costs under the Policy in defense of West Coast, from the inception of the *QualityBuilt.com* action through trial, and continues to incur attorneys' fees and costs in connection with West Coast's post-trial defense and appeal, subject to a full reservation of rights.

55.     The amounts paid by Continental in defense of the *QualityBuilt.com* action (including post-trial and on appeal) are amounts for which West Coast is primarily liable and which rightfully should have been paid by West Coast, insofar as, for the reasons set forth above, coverage is not afforded under the Policy for the *QualityBuilt.com* action or for the Judgment entered therein, and Continental had no duty to defend and has no on-going duty to defend or indemnify West Coast in that matter.

56.     Accordingly, Continental is entitled to an award against West Coast of those amounts paid or advanced by Continental under the Policy in defense of and indemnity for the *QualityBuilt.com* action pursuant to Continental's reservation of rights.

## COUNT VII

### (Alternatively, Equitable Contribution – Against West Coast)

57.     Continental repeats and incorporates by reference the allegations in paragraphs 1 through 56 of the Complaint.

58.     Continental has paid substantial attorneys' fees and costs under the Policy in defense of West Coast, from the inception of the *QualityBuilt.com* action through trial, and Continental continues to incur attorneys' fees and costs in connection with West Coast's post-trial defense and appeal, subject to a full reservation of rights.

59.     Some of the amounts paid by Continental in defense of the *QualityBuilt.com* action (including post-trial and on appeal) are amounts for which West Coast is primarily liable and which rightfully should have been paid by West Coast, insofar as, for the reasons set forth above,

1012229v2

- 11 -

**COMPLAINT**

1   coverage is not afforded under the Policy for the *QualityBuilt.com* action or for the Judgment

2   entered therein, and Continental had no duty to defend and has no on-going duty to defend or

3   indemnify West Coast in that matter.

4        60.     Accordingly, Continental is entitled to an award against West Coast of those

5   amounts paid or advanced by Continental under the Policy in defense of or indemnity for the

6   *QualityBuilt.com* action pursuant to Continental's reservation of rights, for which coverage is or

7   was not afforded under the Policy.

8   <div align="center">**PRAYER FOR RELIEF**</div>

9        WHEREFORE, Continental prays for the following relief and for judgment against

10   Defendants as follows:

11   <div align="center">**COUNT I**</div>

12        1.     A judgment declaring that coverage is not afforded under the Policy for the

13   *QualityBuilt.com* action or the Judgment and that Continental therefore has no obligation to

14   satisfy the Judgment or indemnify West Coast for the Judgment or any settlement thereof.

15   <div align="center">**COUNT II**</div>

16        2.     A judgment declaring that coverage is not afforded under the Policy for the

17   *QualityBuilt.com* action or the Judgment and that Continental therefore has no obligation to

18   satisfy the Judgment or indemnify West Coast for the Judgment or any settlement thereof.

19   <div align="center">**COUNT III**</div>

20        3.     A judgment declaring that coverage is not afforded under the Policy for the

21   *QualityBuilt.com* action or the Judgment and that Continental therefore has no obligation to

22   satisfy the Judgment or indemnify West Coast for the Judgment or any settlement thereof.

23   <div align="center">**COUNT IV**</div>

24        4.     A judgment declaring that coverage is not afforded under the Policy for the

25   Judgment and that Continental therefore has no obligation to satisfy the Judgment or indemnify

26   West Coast for the Judgment or any settlement thereof.

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-8592

<div align="center">**COMPLAINT**</div>

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1200
IRVINE, CA 92614-8592

## COUNT V

5.      A judgment declaring that Continental had no obligation and has no continuing obligation under the Policy to defend West Coast in the *QualityBuilt.com* action, including no obligation to defend West Coast on any appeal thereof; and

6.      A judgment declaring that Continental is entitled to an award of those amounts paid or advanced by Continental under the Policy in defense of the *QualityBuilt.com* action pursuant to its reservation of rights.

## COUNT VI

7.      An award of those amounts paid or advanced by Continental under the Policy in defense of or indemnity for the *QualityBuilt.com* action pursuant to Continental's reservation of rights

## COUNT VII

8.      Alternatively, an award of those amounts paid or advanced by Continental under the Policy in defense of or indemnity for the *QualityBuilt.com* action pursuant to Continental's reservation of rights, for which coverage is or was not afforded under the Policy.

## ALL COUNTS

9.      For Continental's costs of suit herein; and

10.     For such other relief as this Court deems just and proper.


Dated: May 11, 2009                     Respectfully submitted,

                                        TROUTMAN SANDERS LLP


                                        By:
                                            Terrence R. McInnis
                                            Monique M. Fuentes
                                            Malte L. L. Farnaes
                                            Peter R. Lucier

                                            *Attorneys for Plaintiff*
                                            *Continental Casualty Company*

## TABLE OF CONTENTS

Exhibit A...................................................................................Page 14

Exhibit B...................................................................................Page 41

Exhibit C...................................................................................Page 54

**EXHIBIT A**

# CNA
For All the Commitments You Make®

**CONSTRUCTION TECHNICAL AND PLANNING CONSULTANTS PROGRAM**

## POLICY DECLARATIONS

| AGENCY BRANCH | PREFIX | POLICY NUMBER | INSURANCE IS PROVIDED BY |
|---|---|---|---|
| | | | CONTINENTAL CASUALTY COMPANY, |
| 056125  969 | MCA | 11-410-39-74 | CNA PLAZA, CHICAGO, IL 60685, A STOCK INSURANCE COMPANY, HEREIN CALLED WE, US, OR OUR. |

### NOTICE

**THIS IS A CLAIMS-MADE POLICY. PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

1. NAMED INSURED:

   WEST COAST PROPERTY
      CONSULTANTS INC.

2. ADDRESS:

   7920 Arjons Drive
   Suite E
   San Diego, California 92126

3. POLICY TERM: From:  09/01/2005   To:   09/01/2006    AT 12:01 a.m.
   Standard time at **your** address shown above.

4. KNOWLEDGE DATE:    09/01/00

5. DEDUCTIBLE:
   a. $    25,000 Purchased Deductible
   b. $     N/A    Deductible Credit
   c. $    25,000 is Deductible per **claim** (including **claim expenses**)
   d. $     N/A    is Aggregate Deductible per **policy year**
                  (including **claim expenses**)

6. LIMIT OF LIABILITY:
   a. $   5,000,000 Per **claim** limit of liability (including **claim expenses**)
   b. $   5,000,000 Aggregate limit of liability per **policy year**
                  (including **claim expenses**)

7. INCEPTION DATE:  09/01/00  is the date of the first policy issued to
                    **you** and continuously renewed by us.

171341

_Jeremy W. Oliver_ (signature)
Authorized Representative

CLAIMS COPY

G-136512-A17
(ED. 07/03)

- 1 -

Exb. A Page 14

**CNA**

For All the Commitments You Make®

DECLARATIONS CONTINUED
Policy MCA 11-410-39-74  Effective  09/01/05

8.  $     7,975,000 is the Total Billings

9. PREMIUM:                          10. INSTALLMENT PREMIUM PAYMENT:
    $     138,948 Standard
    $         0 .
    $     138,948 Total                       N/A
          0.00 CIGA* =$     138,948.00

    *California Insurance Guarantee Association

11.  Endorsements attached at policy effective date:

     G-136558-A04       State Provisions - California
     G-144291-A         Economic and Trade Sanctions Condition
     G-138995-A         Amendment of Exclusion E
     G-144872-A         Coverage of and Cap on Losses for Certified Acts
     GSL44600XX(6-05)   Deletion of Mediation Credit
     G-136511-A         Professional Liability Policy

171341                    _____
                                   Authorized Representative

G-136512-A17                       -1A-                    CLAIMS COPY
(ED. 07/03)


**CNA**
For All the Commitments You Make®

CONSTRUCTION, TECHNICAL AND
PLANNING CONSULTANTS PROGRAM

INSURED: West Coast Property Consultants Inc.
Policy MCA-11-410-39-74   Effective 09/01/05

Endorsement Number   1

## STATE PROVISIONS - CALIFORNIA

We agree with **you** that the cancellation and non-renewal provisions for this Policy are as follows:

I. Cancellation

A. This Policy can be canceled by either the **Named Insured** or us.

   1. The **Named Insured** can cancel this Policy at any time. To do so, the **Named Insured** must:

      a. return the Policy to us or any of our authorized representatives; or
      b. mail a written notice to us;
      stating when the cancellation is to be effective. We must receive the Policy or written notice before the cancellation date.

   2. We can cancel this Policy by giving written notice to the **Named Insured** at least:

      a. 10 days, if cancellation is for:
         (1) nonpayment of premium. **You** may continue the coverage by payment in full at any time prior to the date the cancellation is effective;
         (2) fraud relating to this Policy or to a **claim** made under this Policy; or
      b. 30 days, if cancellation is for another reason;
      before the date the cancellation is effective.

B. We will mail or deliver notice to the **Named Insured** at the mailing address shown in the policy. A copy shall be also be mailed to the **Named Insured**'s agent.

C. Notice of cancellation will state the date the cancellation is effective. The policy will end on that date. The grounds for such cancellation shall also be stated.

171341

G-136558-A04
(Ed. 07/99)                        PAGE   1

CLAIMS COPY



**CNA**
For All the Commitments You Make®

CONSTRUCTION, TECHNICAL AND
PLANNING CONSULTANTS PROGRAM

INSURED: West Coast Property Consultants Inc.
Policy MCA-11-410-39-74  Effective 9/1/05

Endorsement Number    1

ENDORSEMENT CONTINUED

D.   If notice is mailed, proof of mailing will be
     sufficient proof of notice.

E.   If this Policy is canceled, we will send the **Named
     Insured** any premium refund due.  If we cancel, the
     refund will be pro-rata.  If the **Named Insured** cancels,
     the refund may be less than pro-rata.  The cancellation
     will be effective even if we have not made or offered a
     refund.

F.   If this policy has been in effect for more than 60 days
     or is a renewal policy, we shall not cancel this Policy
     except for one or more of the following conditions:

     1.  nonpayment of premium;

     2.  any:
         a.  material misrepresentation; or
         b.  fraud relating to this Policy or to a **claim**
             made under this Policy;
         c.  discovery of willful or grossly negligent
             acts or omissions; or
         d.  violation of state laws or regulations;
         by or with the knowledge of **you** or **your**
         representatives;

     3.  a material increase in the hazard insured against:
         a.  which could not have been reasonably
             contemplated at the inception of the contract
             unless the **Named Insured** has notified us of
             the change and we have accepted it;
         b.  having as one of its necessary elements the
             conviction of a crime;

     4.  failure to eliminate conditions that increase the
         chance of loss after notification that the
         condition must be removed;

     5.  substantial loss of reinsurance by us affecting
         this particular type of insurance, certified by
         the insurance regulatory authority;

     6.  determination by the insurance regulatory
         authority that continuation of the policy will
         place us in violation of the insurance laws of the
         state or will jeopardize our solvency.

171341

G-136558-A04          PAGE  2
(Ed. 07/99)
                                           CLAIMS COPY

**CNA**
For All the Commitments You Make®

CONSTRUCTION, TECHNICAL AND
PLANNING CONSULTANTS PROGRAM

INSURED: West Coast Property Consultants Inc.
Policy MCA-11-410-39-74  Effective 9/1/05          Endorsement Number    1

ENDORSEMENT CONTINUED

II.   Nonrenewal

If we decide not to renew this Policy, at least 60 days but
not more than 120 days advance written notice shall be
mailed or delivered to the **Named Insured** at the address
shown in the Policy.  The notice shall include the reason
for such nonrenewal.

This provision does not apply in the event the **Named
Insured**:

A.    requested a change in the terms or conditions or
      hazards covered by the policy within 60 days prior to
      the end of the **policy term**;
B.    requested or agreed to nonrenewal; or
C.    insured elsewhere or accepted replacement coverage.

If we offer to renew this Policy at less favorable  as to
the dollar amount of coverage, deductibles, higher rates or
rating plans exceeding 25%, such less favorable terms will
take effect on the renewal date if we have notified the
**Named Insured** of the less favorable terms at least 60 days
but not more than 120 days prior to the expiration date of
this Policy.

If we have not given such advance notice, the **Named Insured**
may cancel the renewal policy within 60 days after receiving
notice, and any earned premium shall be calculated on a pro-
rata basis of the premium applicable to the policy being
renewed.


All other provisions of this policy remain unchanged.

171341

Countersigned by Authorized Representative

G-136558-A04
(Ed. 07/99)                    PAGE   3

                                          CLAIMS COPY



CONS_____CTION, TECHNICAL AND
PLANNING CONSULTANTS PROGRAM

For All the Commitments You Make®

INSURED: West Coast Property Consultants Inc.
Policy MCA-11-410-39-74   Effective 09/01/05   Endorsement Number   2

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ECONOMIC AND TRADE SANCTIONS CONDITION**

The following condition is added to the Policy CONDITIONS:

**ECONOMICS AND TRADE SANCTIONS CONDITIONS**

In accordance with laws and regulations of the United States
concerning economic and trade embargoes, this policy is void
ab initio with respect to any term or condition of this policy
that violates any laws or regulations of the United States
concerning economic and trade embargoes including, but not
limited to the following:

1.  Any insured or any person or entity claiming the benefits
    of an insured, who is or becomes a Specially Designated
    National or Blocked Person or who is otherwise subject to
    U.S. economic or trade sanctions;

2.  Any claim or suit that is brought in a Sanctioned Country or
    by a Sanctioned Country Government, where any action in connec-
    tion with such claim or suit is prohibited by U.S. economic or
    trade sanctions;

3.  Any claim or suit that is brought by any Specially Designated
    National or Blocked Person or any person or entity who is other-
    wise subject to U.S. economic or trade sanctions;

4.  Property that is located in a Sanctioned Country or that is owned
    by, rented to or in the care, custody or control of a Sanctioned
    Country Government, where any activities related to such property
    are prohibited by U.S. economic or trade sanctions; or

5.  Property that is owned by, rented to or in the care, custody or
    control of a Specially Designated National or Blocked Person, or
    any person or entity who is otherwise subject to U.S. economic or
    trade sanctions.

As used in this endorsement a Specially Designated National or Blocked
Person is any person or entity that is on the list of Specially
Designated Nationals and Blocked Persons issued by the U.S. Treasury

171341

G-144291-A          PAGE  1
(Ed. 03/03)

CLAIMS COPY

**CNA**
For All the Commitments You Make®

CONSTRUCTION, TECHNICAL AND
PLANNING CONSULTANTS PROGRAM

INSURED: West Coast Property Consultants Inc.
Policy MCA-11-410-39-74  Effective 9/1/05

Endorsement Number   2

ENDORSEMENT CONTINUED

Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this endorsement a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

171341

Countersigned by Authorized Representative

G-144291-A
(Ed. 03/03)

PAGE   2

CLAIMS COPY

**CNA**
For All the Commitments You Make®

CONS___UCTION, TECHNICAL AND
PLANNING CONSULTANTS PROGRAM

INSURED: West Coast Property Consultants Inc.
Policy MCA-11-410-39-74   Effective 09/01/05

Endorsement Number   3

AMENDMENT OF EXCLUSION E

We agree with **you** that Section IV. EXCLUSIONS, Item E. is deleted
in its entirety and replaced by the following:

E.   made against **you** by any entity:

1.   which is operated, managed or controlled by **you**;
2.   in which **you** have an ownership interest in excess of
     49%; or
3.   which wholly or partly owns, operates or manages **you**;

All other provisions of this policy remain unchanged.

171341

Countersigned by Authorized Representative

G-138995-A
(Ed. 05/00)

CLAIMS COPY



**CNA**
For All the Commitments You Make®

CONS...UCTION, TECHNICAL AND
PLANNING CONSULTANTS PROGRAM

INSURED: West Coast Property Consultants Inc.
Policy MCA-11-410-39-74   Effective 09/01/05    Endorsement Number    4

### COVERAGE OF AND CAP ON LOSSES FOR CERTIFIED
### ACTS OF TERRORISM

In consideration of the premium charge of $0.00, it is agreed  as
follows:

1.   The  DEFINITIONS  section  is amended by the addition of the
following new term:

**Certified act of terrorism** means an act that is certified
by the Secretary of the Treasury, in concurrence with the
Secretary of State and the Attorney General of the United
States, to be an act of terrorism pursuant to the federal
Terrorism Risk Insurance Act of 2002.

The federal Terrorism Risk Insurance Act of 2002 sets forth
the following criteria for a **certified act of terrorism**:

a.   the act resulted in aggregate losses in excess of $5
million; and
b.   the act is a violent act or an act that is dangerous to
human life, property or infrastructure and is committed
by an individual or individuals acting on behalf of any
foreign person or foreign interest, as part of an effort
to  coerce the civilian population of the United States
or to influence the policy or affect the conduct of the
United States Government by coercion.

2.   This  Policy provides coverage for losses arising from
**certified acts of terrorism** subject to all other terms and
conditions of this policy.

3.   Under the federal Terrorism Risk Insurance Act of 2002, any
losses caused by **certified acts of terrorism** will be
partially reimbursed by the United States under a formula
established by federal law.  Under this formula, the  United
States pays 90% of covered terrorism losses exceeding the
statutorily established deductible paid by the insurance
company providing the coverage.

4.   With respect to any one or more **certified acts of
terrorism**, the Insurer will not pay any amounts for which

171341

G-144872-A
(Ed. 01/03)              PAGE  1                     CLAIMS COPY

**CNA**
For All the Commitments You Make®

CONSTRUCTION, TECHNICAL AND
PLANNING CONSULTANTS PROGRAM

INSURED: West Coast Property Consultants Inc.
Policy MCA-11-410-39-74   Effective 9/1/05     | Endorsement Number   4

ENDORSEMENT CONTINUED

the Insurer is not responsible under the terms of the federal
Terrorism Risk Insurance Act of 2002 (including subsequent
acts of Congress pursuant to the Act) due to the application
of any clause in such law which results in a cap on the Insurer's
liability for payments for terrorism losses.

All other provisions of this policy remain unchanged.

171341

Countersigned by Authorized Representative

G-144872-A
(Ed. 01/03)                      PAGE   2

CLAIMS COPY



**CNA**
For All the Commitments You Make®

CONSTRUCTION, TECHNICAL AND
PLANNING CONSULTANTS PROGRAM

INSURED: West Coast Property Consultants Inc.
Policy MCA-11-410-39-74    Effective 09/01/05     Endorsement Number    5

### DELETION OF MEDIATION CREDIT

We agree with **you** that the Policy is amended as follows:

Paragraph C. **Mediation** Credit in Section **V. LIMITS OF LIABILITY/
DEDUCTIBLE** is deleted in its entirety.

All other provisions of this policy remain unchanged.

> This endorsement, which forms a part of and is for attachment to the
> Policy issued by the designated Insurers, takes effect on the
> effective date of said Policy at the hour stated in said Policy and
> expires concurrently with said Policy unless another effective date
> is shown below.
>
> By Authorized Representative
> (No signature is required if issued with the Policy or if it is
>   effective on the Policy Effective Date)

171341

Countersigned by Authorized Representative

GSL4460XX(6-05)
(Ed.

CLAIMS COPY

# PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY INSURANCE POLICY

© 1999, Member Companies of CNA Insurance.  All rights reserved.

## TABLE OF CONTENTS

| I. | COVERAGE AGREEMENTS | Page 2 |
|----|---------------------|--------|
| II. | SUPPLEMENTARY PAYMENTS | Page 3 |
| III. | DEFINITIONS | Pages 3 through 8 |
| IV. | EXCLUSIONS | Pages 8 through 10 |
| V. | LIMITS OF LIABILITY/DEDUCTIBLE | Pages 10 and 11 |
| VI. | CONDITIONS | Pages 11 through 16 |

G-136611-A
(Ed. 07/99)

1

## PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY INSURANCE POLICY

© 1999, Member Companies of CNA Insurance. All rights reserved.

> YOUR PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY INSURANCE POLICY IS WRITTEN ON A "CLAIMS MADE" BASIS AND APPLIES ONLY TO THOSE CLAIMS FIRST MADE AGAINST YOU WHILE THIS INSURANCE IS IN FORCE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST YOU AFTER THE END OF THE POLICY TERM UNLESS, AND TO THE EXTENT, AN EXTENDED REPORTING PERIOD APPLIES.

Throughout this Policy, the terms "we," "us" and "our" refer to the Stock Insurance Company, named on the Policy Declarations, providing this insurance. When used in the text of this Policy or endorsements hereto, the words displayed in "**bold face type**" will only have the meaning as set forth in Section III., DEFINITIONS. We agree with **you** as follows:

### I.  COVERAGE AGREEMENTS

A.  We will pay all amounts in excess of the deductible up to the Limit of Liability that **you** become legally obligated to pay as a result of:

    1.  a **wrongful act**; or

    2.  a **pollution incident** arising out of **your** activities or the activities of any person or entity for whom **you** are liable,

that results in a **claim** anywhere in the world, provided that on the knowledge date set forth on the Declarations no officer, director, principal, partner or insurance manager knew or could reasonably have expected that a **claim** would be made.

B.  A **claim** arising out of a **wrongful act** or **pollution incident** must be first made during the **policy year** or any applicable **extended reporting period**. A **claim** is considered first made when **you** receive notice of the **claim** or as set forth in accordance with Section VI. CONDITIONS, Item C., **Your** Rights and Duties in the Event of a **Circumstance**.

C.  We have the right and duty to defend any **claim** against **you** seeking amounts that are payable under the terms of this Policy, even if any of the allegations of the **claim** are groundless, false or fraudulent. We will designate or, at our option, approve counsel to defend the **claim**. We are not obligated to defend any **claim** or pay any amounts after the applicable limit of our liability has been exhausted.

D.  We will not settle any **claim** without **your** informed consent.

E.  If a **claim** results in a punitive, exemplary or multiplied damage award, we will pay such award, up to the applicable Limit of Liability, to the fullest extent permitted by law.

## PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY INSURANCE POLICY

© 1999, Member Companies of CNA Insurance. All rights reserved.

II.   **SUPPLEMENTARY PAYMENTS**

Except as noted in subparagraph C below, payments made under this section are our costs, are not subject to the deductible and are in addition to the limit of liability shown on the Declarations.

A.   Free Pre-claims Assistance

Until the date a **claim** is made, we will pay for all costs or expenses we incur, at our sole discretion, as a result of investigating a **circumstance** that **you** report in accordance with Section VI. CONDITIONS, Item C.

B.   Defendants Reimbursement

We will pay up to $300 a day, subject to a maximum amount of $7,500 per **claim**, because of time off from work for attendance, at our request, at a trial, hearing or deposition involving a civil suit, **mediation** or arbitration proceeding against **you** that is covered by this Policy.

C.   ADA, FHA and OSHA

We will reimburse **you** for legal fees and expenses up to $25,000 per **policy year** in responding to regulatory or administrative actions brought directly against **you** by a government agency under the Americans with Disabilities Act of 1990 (ADA), the Fair Housing Act (FHA) or the Occupational Safety and Health Act (OSHA) provided that the regulatory or administrative actions:

1.   are first commenced during the **policy year**;

2.   arise out of the performance of **professional services**; and

3.   are reported to us prior to any legal fees or expenses being incurred.

After we have paid $25,000 under this provision, any additional amounts we agree to pay will be treated as **claim expenses** and will be subject to **your** deductible and be included in the limit of liability for the **policy year** in which the action was commenced.   We will not be responsible for any fines or penalties.

III.   **DEFINITIONS**

A.   **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads including any attached machinery or equipment.  But **auto** does not include **mobile equipment**.

G-136511-A
(Ed. 07/99)

3

## PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY INSURANCE POLICY

© 1999, Member Companies of CNA Insurance.  All rights reserved.

B.  **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

C.  **Circumstance** means an event reported during the **policy term** from which **you** reasonably expect that a **claim** could be made.

D.  **Claim** means a demand for money or services, naming **you** and alleging a **wrongful act** or **pollution incident**.

E.  **Claim expenses** means:

   1.  fees charged by an attorney designated or approved by us to represent **you**;

   2.  all other fees, costs, and expenses resulting from the investigation, adjustment, defense and appeal of a **claim**, if incurred by:

      a.  the designated attorney,

      b.  us, or

      c.  **you** with our written consent; and

   3.  premiums for bonds posted in connection with an appeal.  However, we are not obligated to apply for or furnish any such bonds.

   **Claim expenses** do not include salaries of our employees or officials, or fees and expenses of independent adjusters.

F.  **Extended reporting period** means the period of time after the end of the **policy term** for reporting **claims** to us that are made against **you** during the applicable **extended reporting period** arising out of:

   1.  a **wrongful act** that took place prior to the end of the **policy term** that is otherwise covered by this Policy; or

   2.  activities that took place prior to the end of the **policy term** that result in a **pollution incident** that is otherwise covered by this Policy.

G.  **Hostile fire** means one that becomes uncontrollable or breaks out from where it was intended to be.

H.  **Mediation** means the use of non-binding intervention by a neutral third party.

G-136511-A
(Ed. 07/99)

4

## PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY INSURANCE POLICY

© 1999, Member Companies of CNA Insurance. All rights reserved.

I.  **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

    1.  bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

    2.  vehicles maintained for use solely on or next to premises **you** own or rent;

    3.  vehicles that travel on crawler treads;

    4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        a.  power cranes, shovels, loaders, diggers or drills, or

        b.  road construction or resurfacing equipment such as graders, scrapers or rollers;

    5.  vehicles not described in 1., 2., 3. and 4. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        a.  air compressors, pumps and generators, including spraying, welding, building cleaning, geo-physical exploration, lighting and well servicing equipment, or

        b.  cherry pickers and similar devices used to raise or lower workers;

    6.  vehicles not described in 1., 2., 3. or 4. above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

        a.  equipment designed primarily for:

            i.  snow removal,

            ii.  road maintenance, but not construction or resurfacing, or

            iii.  street cleaning;

        b.  cherry pickers and similar devices mounted on an **auto** or truck chassis and used to raise or lower workers; and

G-136511-A
(Ed. 07/99)

5

**PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY
INSURANCE POLICY**

© 1999, Member Companies of CNA Insurance. All rights reserved.

    c.    air compressors, pumps and generators, including spraying, welding, building cleaning, geo-physical exploration, lighting and well servicing equipment.

J.    **Named Insured** means the persons or entities listed in Item 1. on the Declarations.

K.    **Newly acquired subsidiary** means any entity, newly formed or acquired by a **Named Insured** during the **policy term**, in which such **Named Insured** has more than a 50% legal or beneficial interest. However, no such entity will be deemed a **newly acquired subsidiary** beyond 90 days after the **Named Insured** acquires or forms it. For coverage to continue beyond the first 90 days, the following conditions apply:

    1.    within 90 days of such formation or acquisition, the **Named Insured** must provide us with full particulars of such **newly acquired subsidiary**;

    2.    we, after receipt of such notice, must agree to endorse this Policy to insure such **newly acquired subsidiary**; and

    3.    the **Named Insured** must pay the additional premium, if any, and agree to any amendment of the provisions of this Policy by reason of such formation or acquisition.

Coverage exists for **claims** made against a **newly acquired subsidiary** only if, prior to the earlier of the acquisition date or formation date, no officer, director, principal, partner or insurance manager of the **Named Insured** or such **newly acquired subsidiary** knew or could reasonably have expected that a **claim** would be made.

L.    **Nuclear facility** means the site where a nuclear reactor is located or where nuclear waste or material is disposed.

M.    **Policy term** means the period of time from the effective date and time of this Policy to the date and time of termination as shown in Item 3 on the Declarations, or its earlier cancellation date.. **Policy term** does not include any **extended reporting period**. If the length of the **policy term** is the same as the **policy year**, the terms **policy term** and **policy year** are used interchangeably herein.

N.    **Policy year** means the period of one year following the effective date of the **policy term** or any subsequent one year anniversary thereof. A **policy year** may be extended or reduced by endorsement, but only as permitted by individual state law, or by termination of the Policy.

Exb. A Page 30

## PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY
## INSURANCE POLICY
© 1999, Member Companies of CNA Insurance.  All rights reserved.

O.   **Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed.  **Pollutants** does not mean heat, smoke, vapor, soot or fumes from a **hostile fire** or explosion.

P.   **Pollution incident** means the actual or alleged discharge, dispersal, seepage, migration, release or escape of **pollutants** into or upon land, the atmosphere or any watercourse or body of water, which results in **bodily injury** or **property damage** and did not arise from dishonest, fraudulent, malicious, or criminal conduct committed by **you** or at **your** direction or with **your** prior knowledge.

Q.   **Professional services** means those services that **you** perform for others on behalf of a **Named Insured** in **your** practice as an architect, engineer, land surveyor, landscape architect, construction manager, scientist or technical consultant.

R.   **Property damage** means the following:

1.   physical injury to or destruction of tangible property including the resulting loss of use thereof;

2.   clean-up costs incurred by a third party or mandated by any governmental entity;

3.   loss of use of tangible property that has not been physically injured or destroyed;

4.   physical damage to soil, surface water, groundwater or plant or animal life.

S.   **Related claims** means all **claims** made against **you** and reported to **us** during any **policy year** arising out of:

1.   a single **wrongful act** or related **wrongful acts**; or

2.   an activity resulting in a **pollution incident** or related activities resulting in **pollution incidents**.

T.   **Wrongful act** means an error, omission or other act that causes liability in the performance of **professional services** for others by **you** or any person or entity, including joint ventures, for whom **you** are liable.  A **wrongful act** cannot arise from dishonest, fraudulent, malicious, or criminal conduct committed by **you** or at **your** direction or with **your** prior knowledge;

Exb. A Page 31

**PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY
INSURANCE POLICY**

© 1999, Member Companies of CNA Insurance.  All rights reserved.

U.   **You** or **your** means the **Named Insured, a newly acquired subsidiary** and:

    1.   any past or present partner, officer, director, member, stockholder or employee of the **Named Insured** or **newly acquired subsidiary** or leased personnel under the direct supervision of the **Named Insured** or **newly acquired subsidiary**; a retired partner, officer, director, member or employee of the **Named Insured** or **newly acquired subsidiary**, while acting within the scope of their duties as a consultant for the **Named Insured** or **newly acquired subsidiary**;

    2.   the heirs, executors, administrators, assigns and legal representatives of any individual or their estate as designated in paragraph A. above in the event of such individual's death, incapacity, insolvency or bankruptcy, but only to the extent that such individual would have been provided coverage under this Policy.

While not within the definition of **you** or **your**, the spouses of those individuals identified in paragraphs 1. and 2. are insured under this Policy but only as respects their liability for **your wrongful acts**.

## IV.   EXCLUSIONS

We will not defend or pay under this Policy for any **claim**:

A.   for liquidated damages in excess of **your** liability caused by a **wrongful act** or a **pollution incident**; for fines and penalties imposed on **you**; or for the failure or refusal of a client to pay money due **you**;

B.   arising out of:

    1.   **your** alleged liability under any oral or written contract or agreement, including but not limited to express warranties or guarantees; or

    2.   the liability of others **you** assume under any oral or written contract or agreement,

except that coverage otherwise available to **you** shall apply to **your** liability that exists in the absence of such contract or agreement.

In a foreign jurisdiction where **your** liability to a client is predicated only on contractual liability, subparagraph 1. does not apply except to the extent that **you** have agreed to pay consequential or liquidated damages;

G-136511-A
(Ed. 07/99)

8

## PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY INSURANCE POLICY

© 1999, Member Companies of CNA Insurance.  All rights reserved.

C.   arising out of the cost to repair or replace faulty workmanship **you** perform on any construction, erection, fabrication, installation, assembly, manufacture or remediation including any materials, parts or equipment furnished in connection therewith;

D.   arising out of the sale or distribution of goods or products by **you**, or by others under license from **you**.  This exclusion does not apply to software created or modified specifically for a client in connection with **your professional services** for that client;

E.   made against **you** by any entity:

    1.   which is operated, managed or controlled by **you**;

    2.   in which **you** have an ownership interest in excess of 49%;

    3.   in which **you** are an officer or director; or

    4.   which wholly or partly owns, operates or manages **you**;

F.   arising out of any obligation **you** have under any unemployment, workers' compensation, employers liability, unemployment compensation, disability benefits or other similar law;

G.   arising out of actual or alleged unlawful discrimination by **you** against **your** personnel or employment applicants;

H.   arising out of a **pollution incident** at, onto or from property or facilities which are or were at any time owned or rented by **you** or by any person or entity in joint venture with **you**;

I.   for a **pollution incident** arising out of the ownership, maintenance, use, operation, loading or unloading of any **auto**, aircraft, watercraft or rolling stock.  This exclusion does not apply to:

    1.   **mobile equipment**;

    2.   a watercraft **you** do not own that is:

        a.   less than 26 feet long; and

        b.   not being used to carry persons or property for a charge;

    3.   the operation of any of the equipment listed in 6. a., b. and c. in the definition of **mobile equipment**; or

**PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY
INSURANCE POLICY**

© 1999, Member Companies of CNA Insurance.  All rights reserved.

    4.    a condition in or on an **auto** not owned or operated by **you**, and that condition was created by the loading or unloading of that **auto** by **you** or by any person or entity for whom **you** are legally liable;

J.    brought by **you** or on **your** behalf against another of **you** covered by this Policy;

K.    arising out of nuclear reaction, radiation or contamination, under any circumstances and regardless of cause, within or originating from a **nuclear facility**.

## V.   LIMITS OF LIABILITY/DEDUCTIBLE

A.    Limits of Liability

    1.    The limit of liability shown under Item 6.a. on the Declarations is the maximum we will pay for any **claim** first made against **you** and reported to us during this **policy year**.  This limit applies as excess over any deductible amount.

    2.    The aggregate limit of liability shown under Item 6.b. on the Declarations is the maximum we will pay for all **claims** first made against **you** and reported to us during the **policy year**.  This limit applies as excess over any deductible amount.

    The **policy year** limits of liability as set forth above may not be aggregated or transferred, in whole or in part, so as to provide any additional coverage in respect of **claims** first made or deemed made during any other **policy year**.  If the limits of liability as specified above for any **policy year** are exhausted, our obligation for that **policy year** shall be deemed completely fulfilled and extinguished.

    3.    All **related claims** shall be considered a single **claim** first made and reported to us within the Policy year in which the earliest of the **related claims** was first made and reported to us.

    4.    **Claim expenses** are subject to and included within the applicable limit of liability.

B.    Deductible

    **You** shall have the obligation to pay up to the deductible amount shown in Item 5.c. on the Declarations resulting from a **claim,** including but not limited to **claim expenses,** and, at a maximum, the amount shown, if any, in Item 5.d. on the Declarations, for all **claims** first made during the **policy year**.

G-136511-A
(Ed. 07/99)

10

**PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY
INSURANCE POLICY**

© 1999, Member Companies of CNA Insurance. All rights reserved.

C.    **Mediation** Credit

If we and **you** agree to use **mediation** and if we and **you** resolve any **claim** by **mediation,** we will reduce **your** deductible obligation for the **claim** by 50% or $25,000, whichever is less.

D.    Reimbursement

If we have paid any amounts in excess of the applicable limit of liability, or within the amount of **your** deductible, **you** shall be liable to us for all such amounts, and upon demand, shall pay such amounts to us.

E.    More Than One Of **You**

Neither the applicable limit of liability nor **your** deductible shall be increased because more than one of **you** is included in a **claim**.

VI.    **CONDITIONS**

A.    **Your** Rights and Duties As The First **Named Insured** On The Policy Declarations

The first **Named Insured,** on behalf of all of **you**, will be:

1.    authorized to make changes in the terms of this Policy with our written consent;

2.    authorized to receive any amounts we refund;

3.    the payee of any amounts paid under Section VI. G.; and

4.    responsible for:

a.    the payment of all premiums and deductible obligations due us,

b.    keeping records of the information we need for premium computation, and sending us copies as we may request,

c.    notifying us of any cancellation or non-renewal.

B.    **Your** Duties If There Is A **Claim**

If there is a **claim, you** must do the following:

1.    promptly notify us in writing. This notice must be sent to the attention of:

G-136511-A                                  11
(Ed. 07/99)

## PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY
## INSURANCE POLICY
© 1999, Member Companies of CNA Insurance. All rights reserved.

Director of Claims
CNA PRO
Two Wisconsin Circle
Chevy Chase, Maryland 20815-7003

The notice must be given to us within a **policy year** or within 60 days after its expiration or termination;

2. specify the names and addresses of the persons making **claim** against **you** and provide us with information on the time, place and nature of the **claim**;

3. promptly forward to us all documents which **you** receive in connection with the **claim**;

4. fully cooperate with us or our designee in the defense of a **claim**, including but not limited to assisting us in: the conduct of suits or other proceedings, settlement negotiations, and the enforcement of any right of contribution or indemnity against another who may be liable to **you**. **You** shall attend hearings and trials and assist in securing evidence and obtaining the attendance of witnesses; and

5. refuse, except solely at **your** own cost, to voluntarily, without our approval, make any payment, admit liability, assume any obligation or incur any expense.

After **you** report a **circumstance** or a **claim** is made and **you** have the right under any contract to either reject or demand arbitration or other alternative dispute resolution process, **you** shall only do so with our written consent after **you** report a **circumstance** or a **claim** is made.

C. **Your** Rights And Duties In The Event Of A **Circumstance**

If **you** report a **circumstance** for which there may be coverage under this Policy,and **you**  give us written notice containing:

1. what happened and the **professional services** or activities **you** performed;

2. the nature of any possible injury or damages; and

3. how **you** first became aware of such **circumstance**.

then any **claim** that may subsequently be made against **you** arising out of such **circumstance** shall be deemed to have been made on the date we received written notice of the **circumstance**.

G-136511-A                          12
(Ed. 07/99)

## PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY
## INSURANCE POLICY

© 1999, Member Companies of CNA Insurance. All rights reserved.

**You** will cooperate with us in addressing the **circumstance**, and refuse, except solely at **your** own cost, to voluntarily, without our approval, make any payment, admit liability, assume any obligation or incur any expense.

D.    Subrogation

If any of **you** have rights to recover amounts from another, those rights are transferred to us to the extent of our payment.  **You** must do everything necessary to secure these rights and must do nothing after **claim** is made to jeopardize them.  We hereby waive subrogation rights against **your** client to the extent that **you** had, prior to a **claim** or **circumstance**, a written agreement to waive such rights.

E.    Premium

All premium charges under this Policy will be computed according to the rules, rates and rating plans that apply at the effective date of the current **policy term**.

F.    Examination and Audit

**You** agree to allow us to examine and audit **your** financial books and records that relate to this insurance.  We may do this at any time during the **policy term** or any extensions, and up to three years after the end of the **policy term**.

G.    Participating Provision

The first **Named Insured** may be entitled to participate in our profits. The profit sharing amount will be calculated in accordance with an Experience Adjustment Plan developed by the Commending Organizations, if any, and us.

H.    Legal Action Limitation

1.    **You** agree not to bring any legal action against us concerning this Policy unless **you** have fully complied with all the provisions of this Policy.

2.    If, after the final adjudication or settlement of a **claim**, there is any dispute concerning tort allegations against us regarding the handling or settlement of any **claim**, we and **you** agree to submit such dispute to any form of alternative dispute resolution acceptable to both parties. Should we and **you** be unable to agree on the form of alternative dispute resolution, then such dispute shall be submitted to binding

G-136511-A                        13
(Ed. 07/99)

## PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY INSURANCE POLICY

© 1999, Member Companies of CNA Insurance. All rights reserved.

arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof

I.    Changes to Policy

None of the provisions of this Policy will be waived, changed or modified except by written endorsement to this Policy.

J.    Transfer of Interest

For a transfer of interest or an assignment of this Policy to be effective, the first **Named Insured** must obtain our written consent.

K.    Other Insurance

If there is other collectible insurance, including but not limited to project specific insurance, that applies to a **claim** covered by this Policy, the other insurance must pay first and this Policy is excess over the other insurance. This Policy applies to the amount of the **claim** that exceeds the available limit of liability and any deductibles or retention amounts of the other insurance.

L.    Cancellation/Non-Renewal

**Your** rights and ours are stated in the attached State Provisions endorsement.

We will make the premium adjustment at the time that cancellation is effective, or as soon as practicable after that time. Premium return will be computed pro rata if we cancel or if **you** cancel at the end of a **policy year**. But if **you** cancel at any other time, only 90% of that amount will be returned.

M.    Severability/Innocent Parties

Any of **you** who did not commit, participate in or have prior knowledge of dishonest, fraudulent, malicious, or criminal conduct, or did not fail to comply with Condition B, shall have the coverage otherwise provided by this Policy.

N.    **Extended Reporting Period**

1.    Automatic **Extended Reporting Period**

If this Policy is canceled or non-renewed by either us or by the first **Named Insured**, we will provide an automatic, non-cancelable **extended reporting period** starting at the termination of the **policy**

G-136511-A
(Ed. 07/99)

14

**PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY
INSURANCE POLICY**

© 1999, Member Companies of CNA Insurance. All rights reserved.

term if the first **Named Insured** has not obtained similar coverage. This automatic **extended reporting period** will terminate after 60 days.

2.   Optional **Extended Reporting Period**

If this Policy is canceled or non-renewed by either us or by the first **Named Insured**, then the first **Named Insured** shall have the right to purchase an optional **extended reporting period**. Such right must be exercised by the first **Named Insured** within 60 days of the termination of the **policy term** by providing:

a.   written notice to us; and

b.   with the written notice, the amount of additional premium described below.

The first sixty days of the optional **extended reporting period**, if purchased, run concurrently with the sixty days of the automatic **extended reporting period**.

3.   Additional Premium

The additional premium for the optional **extended reporting period** shall be based upon the rates for such coverage in effect at the beginning of the **policy term** and shall be for one (1) year at 100% of the **policy term** premium divided by the total number of **policy years** in the **policy term**; three (3) years at 190% of the **policy term** premium divided by the total number of **policy years** in the **policy term**; five (5) years at 250% of the **policy term** premium divided by the total number of **policy years** in the **policy term**.

4.   **Extended Reporting Period** Limitations

No additional or optional **extended reporting period** shall apply to:

a.   any **claim** or proceedings pending at the inception date of such **extended reporting period**;

b.   any paid **claim**; or

c.   **claims** that are covered under any subsequent insurance purchased by **you**, or that would be covered but for exhaustion of the limits of liability applicable to such **claims**.

G-136511-A
(Ed. 07/99)

15

## PROFESSIONAL LIABILITY AND POLLUTION INCIDENT LIABILITY INSURANCE POLICY

© 1999, Member Companies of CNA Insurance.  All rights reserved.

5. Automatic and Optional **Extended Reporting Periods** Limits of Liability

Our liability for all **claims** reported during any automatic and optional **extended reporting periods** shall be part of and not in addition to the limits of liability for the final **policy year**.

O. Liberalization

If we adopt any revision to this form during the **policy term** that would broaden coverage without additional premium, the broadened coverage will apply to this Policy at the inception date of the next **policy year**, but it will not apply to **claims** that were first made against **you** prior to the effective date of such revision.

IN WITNESS WHEREOF, we have this Policy to be signed by its Chairman and Secretary at Chicago, Illinois, but the same shall not be binding upon the Insurer unless signed by our duly authorized representative.

_Bernard L. Hургеbaugh_
Chairman

_Jonald M. Whiter_
Secretary

**G-136511-A**
**(Ed. 07/99)**

16

Exb. A Page 40

1  George E. Fleming, State Bar No. 065804
    Cynthia A. Freeland, State Bar No. 180276
2  **BAKER & McKENZIE LLP**
    101 West Broadway, Twelfth Floor
3  San Diego, CA 92101-3890
    Telephone:  +1 619 236 1441
4  Facsimile:  +1 619 236 0429

5  Attorneys for Plaintiff
    QUALITYBUILT.COM, INC.

```
            FILED
CIVIL BUSINESS OFFICE 10
      CENTRAL DIVISION

   2006 JUL 25  P 3: 47

   CLERK - SUPERIOR COURT
   SAN DIEGO COUNTY, CA
```

6

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  COUNTY OF SAN DIEGO

| | |
|---|---|
| 10  QualityBuilt.com, Inc., | Case No.  GIC 855108 |
| 11         Plaintiff, | **THIRD AMENDED COMPLAINT** |
| 12     v. | **FOR DAMAGES AND INJUNCTIVE RELIEF** |
| 13  Jesse Olague, an individual; West Coast | |
| 14  Property Consultants, Inc., a California corporation; and Does 1 through 20, inclusive, | Dept:      60<br>Judge:   Honorable Yuri Hofmann |
| 15         Defendants. | |

16

17      Plaintiff QUALITYBUILT.COM, INC. alleges as follows:

18                         I.

19                  **GENERAL ALLEGATIONS**

20      1.    Plaintiff QUALITYBUILT.COM, INC. ("QUALITYBUILT" or "Plaintiff") is a

21  California corporation with its principal place of business in Poway, California. QUALITYBUILT

22  is engaged in the real estate and property inspection business.

23      2.    Defendant JESSE OLAGUE ("OLAGUE") was employed by QUALITYBUILT as

24  a field representative from approximately October 2002 until approximately September 2003. He is

25  believed to be a resident of San Diego County, California. He currently is employed by WEST

26  COAST PROPERTY CONSULTANTS, INC. ("WEST COAST").[1]

27

28

---

[1] OLAGUE and WEST COAST collectively shall be referred to herein as "Defendants."

Baker & McKenzie LLP
101 West Broadway,
Twelfth Floor
San Diego, CA 92101
+1 619 236 1441

SDODMS1/664980.1

1

Case No GIC 855108
THIRD AMENDED COMPLAINT

Exb. B Page 41

3.      Defendant WEST COAST is a California corporation with a principal place of business in Solana Beach, California. WEST COAST is a direct competitor of Plaintiff.

4.      ROES 1-10 are customers and prospective customers of QUALITYBUILT. They are named fictitiously in order to protect from the disclosure of their identity and contact information, which are trade secrets of QUALITYBUILT.

5.      Defendants DOES 1 through 20, inclusive, are sued under fictitious names. Their true names and capacities are unknown to Plaintiff. When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believe and thereon allege that each of the fictitiously named defendants is responsible in some manner for the occurrences alleged in this complaint, and that Plaintiff's damages, as alleged in this complaint were proximately caused by such Defendants.

6.      Plaintiff is informed and believes and thereon alleges that at all times mentioned in this complaint, each of the Defendants was the agent of each of the remaining Defendants, and in doing the things hereinafter alleged, acting within the course and scope of such agency and with the permission and consent of the codefendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Business of QUALITYBUILT

7.      QUALITYBUILT is engaged in risk management and quality assurance services for residential and commercial builders of new construction and renovations to real property.

8.      To ensure that its services are of the highest quality, QUALITYBUILT has developed proprietary software and quality assurance systems predicated upon research of more than 800 construction litigation claims spanning 22 years. QUALITYBUILT's research and experience with these claims forms the basis for its systems in inspecting and analyzing construction, systems that have been proven to reduce a customer's exposure to a successful construction defect claim.

9.      Moreover, QUALITYBUILT's research has resulted in QUALITYBUILT developing methods for consulting with customers, methods for inspecting construction projects, and methods for analyzing and compiling the inspection data gathered that result in significant risk

Baker & McKenzie LLP
San Diego

2

SDODMS1/664980.1

Case No OIC 853108
THIRD AMENDED COMPLAINT

Exh. B Page 42

1    reduction, reduced material usage and waste, and significant improvements in the way

2    QUALITYBUILT's customers manage their construction projects.

3        10.    QUALITYBUILT also has devoted a significant amount of resources to developing

4    a thorough training program for inspectors,[2] which all QUALITYBUILT inspectors must complete.

5    Moreover, the inspectors are subject to follow-on audits to ensure compliance with the established

6    metrics of the particular systems.  Because the training program produces such well-qualified

7    inspectors, QUALITYBUILT takes steps to ensure that its training materials and protocols,

8    including its testing and audit materials, remain confidential.

9        11.    As part of QUALITYBUILT's services, it sends consultants to visit job sites and

10   conduct observations for developers, builders, and home owner associations ("HOA") related to

11   "turnover."  "Turnover" is where the developer turns over a new development or residential project

12   to its HOA.  QUALITYBUILT's consultants make observations on a number of various items to

13   ensure that the project is in good shape from a construction standpoint and is ready to be taken over

14   by the HOA.

15       12.    QUALITYBUILT's consultants utilize proprietary checklists that QUALITYBUILT

16   developed, through the dedication of significant time and resources.  QUALITYBUILT's

17   proprietary checklists (or lists of checkpoints) reflect a hierarchy of risk based upon the complexity

18   of any given task and past performance of that particular construction item.  This hierarchy dictates

19   the priority given to items in a quality assurance inspection, giving the most priority to those items

20   that are high risk for construction defect.

21       13.    The checklists or list of checkpoints were designed by QUALITYBUILT using a

22   compilation of data collected by QUALITYBUILT over a 22 year period which identified for

23   QUALITYBUILT those items that are high risk for construction defects lawsuits or other claims by

24   new home owners.  Indeed, the development of QUALITYBUILT's checklists required and relied

25   upon years of experience and research into building science and root failure analysis.

26   QUALITYBUILT's proprietary software tracks each and every checkpoint to ensure that the data

27

28   _____
     [2] For purposes of its business, QUALITYBUILT uses the terms "inspector," "consultant," and "field representative" interchangeably.

1  collected by field representatives is accurate and confirms that areas questioned by the inspectors
2  are positively addressed.

3      14.    Upon completion of an inspection, QUALITYBUILT consultants prepare and
4  provide customers with reports reflecting statistics on construction quality metrics that are being
5  met as well as those conditions that require attention so as to minimize future claims.
6  QUALITYBUILT's customers do not receive copies of QUALITYBUILT's checklists or lists of
7  checkpoints. Moreover, because the format of the report that is provided to the customers is
8  dictated by the analysis done pursuant to QUALITYBUILT's checklists, the format of the report is
9  proprietary to QUALITYBUILT, and QUALITYBUILT takes steps to ensure that its customers do
10 not disseminate or otherwise disclose the contents of the report.

11 **OLAGUE's Employment with QUALITYBUILT**

12     15.    Pacific Property Consultants ("PPC"), an affiliated company of QUALITYBUILT,
13 hired OLAGUE on January 2, 2002 as a field representative. On or about October 19, 2002,
14 QUALITYBUILT was spun off from PPC, and OLAGUE became a field representative/inspector
15 for QUALITYBUILT at that time. OLAGUE's duties and responsibilities did not change as a
16 result of his change of employment.

17     16.    On November 30, 2002, OLAGUE executed an Employment Agreement with
18 QUALITYBUILT. Subsequently, OLAGUE executed a second Employment Agreement, which
19 became effective February 10, 2003, a true and correct copy of which is attached as Exhibit A and
20 is incorporated herein by reference. Both Employment Agreements contained provisions that
21 required OLAGUE to maintain as confidential QUALITYBUILT's trade secret information.
22 Moreover, pursuant to the Employment Agreement that OLAGUE executed, OLAGUE
23 acknowledged that, upon termination of his employment, he was obligated to deliver to
24 QUALITYBUILT all documents related to QUALITYBUILT. Moreover, throughout OLAGUE's
25 employment with QUALITYBUILT, OLAGUE was verbally notified of the importance of
26 maintaining the confidential nature of QUALITYBUILT's checklist, reports, and training
27 materials.

28

Baker & McKenzie LLP
San Diego

4

Case No. OIC 855108
THIRD AMENDED COMPLAINT

Exh. B Page 44

17.   In his capacity as a field representative/consultant, OLAGUE was provided with and had access to QUALITYBUILT's customer information, including identity and project information, training manuals, HOA checklists, customer reports, and print-outs of compilations of data generated after information from the inspection (gathered through the use of the HOA checklists) was input into a database created through QUALITYBUILT's proprietary software.

**OLAGUE's Departure from QUALITYBUILT And Employment With WEST COAST**

18.   In September 2003, OLAGUE resigned from his position with QUALITYBUILT. Subsequently, QUALITYBUILT learned that WEST COAST, a direct competitor of QUALITYBUILT, had hired OLAGUE.

19.   To ensure that OLAGUE and WEST COAST understood OLAGUE's continuing obligation to maintain as confidential QUALITYBUILT's proprietary and trade secret information, QUALITYBUILT sent correspondence to WEST COAST and to OLAGUE, reminding them of OLAGUE's obligations to QUALITYBUILT.

20.   QUALITYBUILT is informed and believes and thereon alleges that, notwithstanding QUALITYBUILT's efforts to deter OLAGUE from disclosing and WEST COAST from using QUALITYBUILT's confidential, proprietary and/or trade secret information, OLAGUE and WEST COAST embarked upon a campaign to emulate every aspect of QUALITYBUILT'S business to undermine QUALITYBUILT's position in the market. For example, WEST COAST copied the metatags utilized by QUALITYBUILT to ensure that potential customers of QUALITYBUILT could be directed/diverted to WEST COAST and Defendants made use of QUALITYBUILT's confidential, proprietary, and/or trade secret information to unfairly compete with QUALITYBUILT.

## FIRST CAUSE OF ACTION

### Misappropriation of Trade Secrets

### Against OLAGUE, WEST COAST, and Does 1 through 20

21.   Plaintiff incorporates the allegations contained in paragraphs 1 through 20 as if fully set forth in this paragraph.

Baker & McKenzie LLP
San Diego

5

Case No OIC 853108
THIRD AMENDED COMPLAINT

Exb. B Page 45

22.    At all relevant times, QUALITYBUILT possessed confidential information consisting of proprietary checklists (or lists of checkpoints) reflecting a hierarchy of risk based upon the complexity of any given task and past performance of particular construction items, methods for apportioning risk percentages to various construction items, training materials and protocols for inspectors charged with performing inspections in accord with QUALITYBUILT's proprietary checklists, customer information, including identity and project information, and customer reports/compilations of observations and risk assessments predicated upon information gathered through compliance with the proprietary checklists (collectively "Trade Secret Information"). This information had significant value in not being generally known, and QUALITYBUILT took (and continues to take) reasonable steps to ensure that the secrecy of the information was maintained. The efforts that QUALITYBUILT took include, but are not limited to, the following:

- Repeatedly and frequently emphasizing to employees, including OLAGUE, QUALITYBUILT's need to keep such information confidential.

- Requiring, as a condition of employment, that each involved employee, including OLAGUE, promise to turn over all confidential material, and that each employee, including OLAGUE, agree not to disclose any information relating to the trade secrets, and that each employee sign an employment agreement containing confidentiality provisions.

- Taking reasonable measures to secure written materials and electronically stored information containing the trade secrets, including, but not limited to:

  - The use of computer passwords and firewalls.

  - Strict limitations on access to computer databases.

  - Use of secured storage cabinets and rooms.

  - Separate databases for individuals and groups.

  - Written policies and handbook provisions which emphasize the importance of maintaining security of confidential information.

  - Sending a letter to OLAGUE after the termination of his employment reminding him of his obligation not to disclose QUALITYBUILT trade secrets.

Baker & McKenzie LLP
San Diego

6

SDODMS1/664980.1

Case No CIC 833108
THIRD AMENDED COMPLAINT

Exb. B Page 46

- Sending a letter to WEST COAST after they hired OLAGUE informing WEST COAST of OLAGUE's confidentiality obligations to QUALITYBUILT.

- Other measures.

23. OLAGUE learned of and took possession of QUALITYBUILT's Trade Secret Information in the course and scope of his employment with QUALITYBUILT.

24. After being hired by WEST COAST, and continuing to the present time, OLAGUE misappropriated the above described Trade Secret Information by failing to return all of QUALITYBUILT's proprietary and confidential information upon his departure from QUALITYBUILT, disclosing to WEST COAST, without QUALITYBUILT's permission, that Trade Secret Information, and using said information in connection with his employment with WEST COAST to undercut QUALITYBUILT's foothold in the market and to benefit himself and WEST COAST financially by positioning themselves to be more competitive in the market.

25. WEST COAST, through its officers, directors, and/or managing agents, also misappropriated QUALITYBUILT's Trade Secret Information by acquiring it from OLAGUE knowing or having reason to know that it acquired it by improper means, using said information knowing or having reason to know that its knowledge of the Trade Secret Information was acquired through OLAGUE who had utilized improper means to acquire it, and who owed a duty to QUALITYBUILT to maintain its secrecy, and disclosing said information to other WEST COAST employees knowing or having reason to know that its knowledge of the Trade Secret Information was acquired through OLAGUE who had utilized improper means to acquire it, and who owed a duty to QUALITYBUILT to maintain its secrecy.

26. Defendants disclosed and used said Trade Secret Information knowing that the disclosure and use would violate OLAGUE'S duty to keep said information secret and only to use said information for the benefit of QUALITYBUILT. Thereafter, Defendants used the foregoing Trade Secret Information without the consent of QUALITYBUILT and with reason to know that their possession of the Trade Secret Information was derived unlawfully and improperly through OLAGUE, who had a duty to Plaintiff to maintain the secrecy of the information.

7

Baker & McKenzie LLP
San Diego

SDODMS1/664980.1

Case No OIC 855108
THIRD AMENDED COMPLAINT

Exb. B Page 47

27.     As a result of the Defendants' misappropriation, QUALITYBUILT has suffered actual damages in a sum in excess of the jurisdictional amount of this Court. As a further result of this misappropriation, QUALITYBUILT is informed and believes that Defendants have been unjustly enriched. The amount of this unjust enrichment cannot presently be ascertained, and QUALITYBUILT will move to amend this complaint to specify the amount when it becomes known, or on proof thereof.

28.     The aforementioned acts of the Defendants were willful and malicious in that Defendants engaged in a scheme, which was authorized or ratified by officers, directors, and/or managing agents of WEST COAST, to acquire Trade Secret Information from QUALITYBUILT with the specific intent to use said information for their own gain, thereby warranting exemplary and punitive damages, pursuant to Civil Code section 3294, Civil Code section 3426.3(c), and an award of reasonable attorneys fees pursuant to Civil Code section 3426.4.

29.     The wrongful conduct of Defendants, as described above, unless and until enjoined and restrained by this Court, will cause and has caused great and irreparable injury to QUALITYBUILT's business because Defendants have gained a competitive advantage by using said Trade Secret Information without having to invest time, effort, and financial resources to develop said trade secrets on their own.

30.     QUALITYBUILT has no adequate remedy at law for the injuries currently being suffered in that Defendants will continue to misappropriate the Trade Secret Information and QUALITYBUILT would be required to maintain a multiplicity of judicial proceedings to protect its interests.

## SECOND CAUSE OF ACTION

### [Conversion Against OLAGUE]

31.     QUALITYBUILT incorporates the allegations contained in paragraphs 1 through 30 as if fully set forth in this paragraph.

32.     By OLAGUE taking possession of QUALITYBUILT's Trade Secret Information and failing to return it to QUALITYBUILT upon termination of employment, OLAGUE

Baker & McKenzie LLP
San Diego

8

1  wrongfully exercised dominion and control over QUALITYBUILT's Trade Secret Information that
2  is reflected in hard copy documents.

3       33.   As a result of Defendant's conversion, QUALITYBUILT has suffered significant
4  economic damages, in an amount to be proven at trial.

5       34.   The aforementioned acts of the Defendant were willful and malicious in that
6  Defendant engaged in a scheme to acquire QUALITYBUILT'S Trade Secret Information with the
7  specific intent to use said confidential information for his own gain, thereby warranting exemplary
8  and punitive damages, pursuant to Civil Code section 3294, Civil Code section 3426.3(c), and an
9  award of reasonable attorneys fees pursuant to Civil Code section 3426.4.

10                     **THIRD CAUSE OF ACTION**

11                [Breach of Contract against OLAGUE]

12       35.   Plaintiff incorporates the allegations contained in paragraphs 1 through 34 as if fully
13  set forth in this paragraph.

14       36.   OLAGUE entered into a written contract with QUALITYBUILT. (*See* Exhibit A.)
15  Plaintiff has performed all conditions, covenants, and promises required of them under the
16  agreements.

17       37.   OLAGUE breached this contract by the following acts:

18         • Using QUALITYBUILT's Trade Secret Information in an
19           unauthorized fashion, for improper purposes, in his new job
         working for his new employer.

20         • Retaining and failing to return QUALITYBUILT's Trade
21           Secret Information to the QUALITYBUILT upon termination
         of employment.

22         • Disclosing QUALITYBUILT's Trade Secret Information to
23           WEST COAST.

24         • Failing to protect the value of the Trade Secret Information of
         QUALITYBUILT and failing to prevent misappropriation and
25           disclosure of such confidential information upon termination of
         employment.

26         • Using trade secrets and other confidential information to his
27           own benefit and using such information to the detriment of the
         Plaintiff.

28

38. As a result of OLAGUE's breach, QUALITYBUILT has suffered economic damages, consisting of lost profits and other damages in an amount subject to proof at trial.

39. The wrongful conduct of Defendants, as described above, unless and until enjoined and restrained by this Court, has caused and will continue to cause great and irreparable injury to Plaintiff's business because Defendants have gained a competitive advantage by using said Trade Secret Information without having to invest time, effort, and financial resources to develop said trade secrets on their own..

40. QUALITYBUILT has no adequate remedy at law for the injuries currently being suffered in that Defendants will continue to misappropriate the Trade Secret Information and QUALITYBUILT would be required to maintain a multiplicity of judicial proceedings to protect its interests.

## FOURTH CAUSE OF ACTION

### [Unfair Competition

### Against All Defendants]

41. Plaintiff incorporates the allegations contained in paragraphs 1 through 40, as if fully set forth herein.

42. Defendants' acts constitute unfair competition and unfair business practices under Business & Professions Code section 17200 *et seq.*

43. As a result of Defendants' conduct, they have been unjustly enriched in an amount far in excess of the jurisdictional requirements of this Court, and QUALITYBUILT is entitled to restitution and disgorgement remedies for loss of business and other economic damages.

44. The aforementioned acts of the Defendants were willful and malicious in that Defendants engaged in a scheme, which was authorized or ratified by officers, directors, and/or managing agents of WEST COAST, to acquire confidential knowledge from Plaintiff with the specific intent to use said Trade Secret Information for their own gain, thereby warranting exemplary and punitive damages, pursuant to Civil Code section 3294 and an award of reasonable attorneys' fees pursuant to Code of Civil Procedure section 1021.5.

Baker & McKenzie LLP
San Diego

10

Case No. GIC 855108
THIRD AMENDED COMPLAINT

45.   The wrongful conduct of Defendants, as described above, unless and until enjoined and restrained by this Court, will cause great and irreparable injury to Plaintiff's businesses in that Plaintiff has lost substantial work, and continues to lose substantial work and is subject to wrongful competition from WEST COAST, which has gained a competitive advantage by using said Trade Secret Information without having to invest time, effort, and financial resources to develop said trade secrets on their own.

46.   Plaintiff has no adequate remedy at law for the injuries currently being suffered in that Defendants will continue to misappropriate the trade secrets and solicit Plaintiff's customers and, Plaintiff would be required to maintain a multiplicity of judicial proceedings to protect its interests.

## FIFTH CAUSE OF ACTION
### [Breach of Confidence against OLAGUE]

47.   Plaintiff incorporates the allegations contained in paragraphs 1 through 46 as if fully set forth herein.

48.   As above described numerous confidential ideas and items of information were communicated to OLAGUE by Plaintiff during OLAGUE's employment. OLAGUE voluntarily received this information in confidence by agreeing in writing and verbally to keep such ideas in confidence and not to disclose said ideas to any other person or entity without the permission of Plaintiff.

49.   OLAGUE breached his duty of confidence by the conduct described above and incorporated herein.

50.   As a result of this conduct, Plaintiff has suffered economic damages, consisting of lost profits and other damages in an amount subject to proof at trial.

51.   In committing the foregoing acts, Defendant was guilty of malice, fraud and oppression in that he acted with the deliberate intent to injure Plaintiff and enhance his own business. He further acted in conscious disregard of Plaintiff's rights and his obligations to Plaintiff, hereby warranting an award of punitive and exemplary damages in an amount sufficient to punish Defendant and deter him and others from engaging in similar misconduct.

11

Baker & McKenzie LLP
San Diego

SDODMS1/664980.1

Case No GIC 833108
THIRD AMENDED COMPLAINT

Exb. B Page 51

# SIXTH CAUSE OF ACTION

## Breach of Contract

### (Against OLAGUE)

52.   Plaintiff incorporates the allegations contained in paragraphs 1 through 51 as if fully set forth herein.

53.   OLAGUE entered into a written Employment Agreement with QUALITYBUILT. (*See* Exhibit A.) Pursuant to that Employment Agreement, OLAGUE was prohibited, for a period of one year following his departure from QUALITYBUILT (the "Restricted Period"), from soliciting or enticing, directly or indirectly, QUALITYBUILT employees from leaving the employ of QUALITYBUILT to join anyone or any entity in competition with QUALITYBUILT.

54.   QUALITYBUILT is informed and believes and thereon alleges that during the Restricted period OLAGUE, in breach of the written Employment Agreement, solicited and/or enticed QUALITYBUILT employees to leave the employ of QUALITYBUILT and to commence employment with WEST COAST.

55.   Plaintiff has performed all conditions, covenants, and promises required of it under the Employment Agreement.

56.   As a result of OLAGUE's breach, QUALITYBUILT has suffered economic damages, consisting of lost profits and other damages in an amount subject to proof at trial. Furthermore, as a result of OLAGUE's breach, QUALITYBUILT has incurred and will continue to incur attorneys' fees in connection with this matter, for which it is entitled to reimbursement pursuant to the Employment Agreement.

## PRAYER FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER REMEDIES

WHEREFORE, QUALITYBUILT prays for judgment against Defendants and relief as follows:

1.   Economic damages;

2.   Punitive and exemplary damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3.   An amount necessary to prevent the unjust enrichment of Defendants, to the extent

12

Baker & McKenzie LLP
San Diego

SDODMS1/664980.1

Case No GIC 855108
THIRD AMENDED COMPLAINT

Exb. B Page 52

1    that such amount is not included in any actual damages awarded;

2        4.     Reasonable attorneys' fees pursuant to Civil Code section 3426.4, Code of Civil

3   Procedure section 1021.5, and all other applicable statutes, and the Employment Agreement attached

4   as Exhibit A.

5        5.     For a preliminary and permanent injunction requiring Defendants and their agents and

6   employees, and all persons, acting under, or in concert, with them:

7        •   To refrain from continuing the misappropriation of
8           QUALITYBUILT's Trade Secret Information or using said
             Trade Secret Information in any manner.

9        •   To refrain from disclosing any Trade Secret Information of
10           Plaintiff to any other third party.

11        •   To refrain from using any Trade Secret Information of
             Plaintiff.
12

       •   To turn over to Plaintiff any and all Trade Secret Information
13           taken by OLAGUE and WEST COAST from Plaintiff.

14        6.     For other and further relief as the Court may deem proper.

15   Dated: July _24_, 2006

                              BAKER & McKENZIE LLP
16

17

18                         By: _Cynthia A. Freeland_
                            George E. Fleming
19                           Cynthia A. Freeland

20                         Attorneys for Plaintiff
                        Qualitybuilt.com, Inc.

21

22

23

24

25

26

27

28

Baker & McKenzie LLP
San Diego

SDODMS1/664980.1

Case No. OIC 853108
THIRD AMENDED COMPLAINT

Exb. B Page 53

**EXHIBIT C**

F I L E D

Clerk of the Superior Court

MAR 0 2 2009

By: T. Marshall, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

QUALITYBUILT.COM, INC., a California
corporation,

                    Plaintiff

    vs.

WEST COAST PROPERTY
CONSULTANTS, INC. a California
corporation,

                  Defendant.

CASE NO. GIC 855108

**JUDGMENT**

---

    This action came on regularly for trial on or about September 5, 2008 in Department 62 of the San Diego County Superior Court, the Hon. Yuri Hofmann presiding. This case was transferred thereafter to Department 47, the Hon. Richard S. Whitney presiding. The plaintiff appeared by attorneys Kris P. Thompson of the Thompson Law Group, and Cynthia A. Freeland of Schor & Freeland, LLP; the defendant appeared by attorneys Paul Murray and Anahita Nahavandian of Murray & Sabban, LLP. A jury of twelve persons with five alternates was impaneled and sworn. Witnesses were sworn and testified. Documents and other items were introduced and received as evidence. After hearing the evidence and arguments of counsel, the jury was duly instructed by the Court and the cause

1  was submitted to the jury.  The jury deliberated and thereafter returned into court with its verdict as
2  follows:

3      "We the jury in the above titled action, find the following special verdict on the following
4  questions submitted to us:

5      1.    Do any of QualityBuilt.com, Inc.'s ("QB") checkpoints or checklists constitute
6  information that is Trade Secret?

7          YES _x_ /NO___

8          If you answered "NO" to Question 1, go to Question 12 below.

9      2.    Please identify, with as much detail as possible, each checklist(s) and/or checkpoint(s)
10  that you find qualifies as Trade Secret(s).

11          A.    Is the inspection checklist in the Olague Training Manual a trade secret?
12          YES_x_ /NO___

13

14          B.    Is the QB Home Owner Association (HOA) Turnover Inspection Checklist a
15  trade secret?
16          YES _x_ /NO___

17

18          C.    Is The QB Checklist found by Ms. Villanueva in the shredder bin a trade secret?
19          YES_x_ /NO___

20

21          If you answered "NO" in response to A, B, and C of Question 2 above, go to Question
22  12 below.

23      3.    Did West Coast Property Consultants, Inc. ("WCPC") misappropriate any of the Trade
24  Secret(s) indentified in response to Question 2 above?

25          YES_x_ /NO___

26          If you answered "NO" to Question 3, go to Question 12 below.

27      4.    Please identify each Trade Secret that WCPC misappropriated

28

A.   Did WCPC misappropriate the inspection checklist in the Olague Training Manual?

YES_x_/NO___

B.   Did WCPC misappropriate the QB Home Owner Association (HOA) Turnover Inspection Checklist?

YES_x_/NO___

C.   Did WCPC misappropriate the QB Checklist found by Ms. Villanueva in the shredder bin?

YES___/NO_x_

5.   Do the Trade Secret(s) you circled "**YES**" for in response to Question 4 above consist of information that is Readily Ascertainable?

A.   Does the inspection checklist in the Olague Training Manual consist of Readily Ascertainable information?

YES___/NO_x_

B.   Does the QB Home Owner Association (HOA) Turnover Inspection Checklist consist of Readily Ascertainable information?

YES___/NO_x_

C.   Does the QB Checklist found in the shredder bin consist of Readily Ascertainable information?

YES___/NO_x_

If you circled "YES" in response to A,B, and C of question 5 above, go to Question 12.

6.   Do you find that the misappropriation of the Trade Secret(s) which you circled "**NO**" for in response to Question 5 above amount to a Substantial Factor in causing WCPC to be unjustly enriched?

YES_x_/NO___

If you answered "NO" to Question 6, go to Question 12 below.

7.    Identify the Trade Secret(s) for which you answered "**NO**" to question 5 above which was a Substantial Factor of WCPC's unjust enrichment:

      A.    Was WCPC's misappropriation of the checklist in the Olague Training Manual a Substantial Factor of WCPC's unjust enrichment?

           YES_x_/NO___

      B.    Was WCPC's misappropriation of the QB Home Owner Association (HOA) Turnover Inspection Checklist a substantial factor of WCPC's unjust enrichment?

           YES_x_/NO___

      C.    Was WCPC's misappropriation of the QB Checklist found in the shredder bin a Substantial Factor of WCPC's unjust enrichment?

           YES___/NO_x_

If you circled "NO" in response to A, B, and C of question 7 above, go to question 12 below.


8.    For only those Trade Secret(s) for which you circled "**YES**" in response to Question 7 above, please specify the amount of unjust enrichment obtained by WCPC.

| | Trade Secret: | Amount of Unjust Enrichment: |
|---|---|---|
| A. | Checklist in Olague Training Manual | $1,713,529.01 |
| B. | QB Home Owner Association Checklist | $3,000 |
| C. | Checklist in Shredder Bin | $0 |

9.    Did QB Mitigate its damages?

      YES_x_/NO___

If you answered "YES" to Question 9, go to question 11 below.

10.    What amount of WCPC's unjust enrichment would have been avoided if QB mitigated its damages?

      $_____

11.     Do you find by clear and convincing evidence that WCPC willfully and maliciously misappropriated QB's Trade Secrets for which you circled "**YES**" in response to Question 7 above?

YES x /NO___

12.     You have completed the special verdict form. Please sign and date this form below.

_____/s/_____

FOREPERSON

After the jury returned its verdict, the Court held a Phase 2 bench trial on the issue of punitive damages and heard argument on the issue of injunctive relief. Following this Phase 2 trial, the Court denied punitive damages and denied injunctive relief.

It appearing by reason of said verdict that plaintiff QUALITYBUILT.COM, INC is entitled to judgment against defendant WEST COAST PROPERTY CONSULTANTS, INC.

NOW THEREFORE IT IS ORDERED, ADJUDGED and DECREED that said QUALITYBUILT.COM, INC. have and recover from said WEST COAST PROPERTY CONSULTANTS, INC. the sum of $ 1,716,529.01 with interest thereon at the rate of ten percent (10%) per annum from the date of the entry of this judgment until paid. Attorney's fees and costs, if applicable, to be determined by filed motions.

DATED: MAR 0 2 2009

**RICHARD S. WHITNEY**

Hon. Richard S. Whitney,
Judge of the Superior Court
Department 47 Central Division



CLERK'S CERTIFICATE

The foregoing document, consisting of
5 page(s), is a full, true, and correct
copy of the ☒original ☐copy on file in
this office.
Clerk of the Superior Court

03-02-09          by _____
Date                  Deputy

-5-

JUDGMENT

Exb. C Page 58

| | FOR COURT USE ONLY |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**<br>☒ COUNTY COURTHOUSE, 220 W. BROADWAY, SAN DIEGO, CA 92101-3814<br>☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827<br>☐ FAMILY COURT, 1555 6TH AVE, SAN DIEGO, CA 92101-3294<br>☐ MADGE BRADLEY BLDG., 1409 4TH AVE., SAN DIEGO, CA 92101-3105<br>☐ KEARNY MESA BRANCH, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123-1187<br>☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643<br>☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941<br>☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200<br>☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649<br>☐ JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123-2792<br>☐ JUVENILE COURT, 325 S. MELROSE DR., VISTA, CA 92083-6634 | **F I L E D**<br>Clerk of the Superior Court<br><br>MAR 0 3 2009<br><br>By: T. Marshall, Deputy |
| PLAINTIFF(S)/PETITIONER(S)<br><br>QUALITYBUILD.COM, INC. | |
| DEFENDANT(S)/RESPONDENT(S)<br><br>WESTCOAST PROPERTY CONSULTANTS, INC. | JUDGE:    RICHARD S. WHITNEY<br><br>DEPT:    47 |
| **CLERK'S CERTIFICATE OF SERVICE BY MAIL**<br>(CCP 1013a(4)) | CASE NUMBER<br>GIC855108 |

I, certify that:  I am not a party to the above-entitled case; that on the date shown below, I served the following document(s):
CERTIFIED COPY OF JUDGMENT

on the parties shown below by placing a true copy in a separate envelope, addressed as shown below; each envelope was then sealed and, with postage thereon fully prepaid, deposited in the United States Postal Service at:  ☒ San Diego    ☐ Vista    ☐ El Cajon    ☐ Chula Vista    ☐ Ramona, California.

| NAME & ADDRESS | NAME & ADDRESS |
|---|---|
| Attorney Kris Thompson<br>THOMPSON LAW GROUP<br>2550 Fifth Avenue,  Suite 600<br>San Diego, CA  92103 | Attorney Cynthia A. Freeland<br>SCHOR & FREELAND, LLP<br>600 B Street,  Suite 2200<br>San Diego, CA  92101 |

Attorney Paul Murray
MURRAY & SABBAN, LLP
140 Marine View Avenue, Suite 116
Solana Beach, CA  92075

*personally to Anahita Nahavandian* ℗

**CLERK OF THE SUPERIOR COURT**

Date:   March 3, 2009                          by   *Trudy S Marshall*                    , Deputy

Trudy S. Marshall

SDSC CIV-286(Rev 12-02)       **CLERK'S CERTIFICATE OF SERVICE BY MAIL**

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

CONTINENTAL CASUALTY COMPANY, an Illinois Corporation

## DEFENDANTS

WEST COAST PROPERTY CONSULTANTS, INC., a California Corporation, and QUALITYBUILT.COM, INC., a California Corporation

**(b)** County of Residence of First Listed Plaintiff Cook County, IL
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant San Diego County, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. SOUTHERN DISTRICT OF CALIFORNIA

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Terrence R. McInnis (SBN 155416)
Monique M. Fuentes (SBN 205501)
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1200
Irvine, CA 92614
949/622-2700

Attorneys (If Known)

'09 CV 1031 W CAB

BY: DEPUTY

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [X] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [X] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [X] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 190 Other Contract | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 195 Contract Product Liability | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | [ ] 442 Employment | **Habeas Corpus:** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 245 Tort Product Liability | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – Alien Detainee | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332(a) Diversity Jurisdiction

Brief description of cause:
Declaratory relief action regarding insurance coverage dispute.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ Declaratory Relief

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE May 11, 2009

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 134    AMOUNT $350    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

CR    FB 05/12/09

American LegalNet, Inc.
www.FormsWorkflow.com

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS000734
Cashier ID: mbain
Transaction Date: 05/12/2009
Payer Name: ADVANCED ATTORNEY SERVICES
------------------------------------
CIVIL FILING FEE
 For: CONTINENTAL CASUALTY VS WEST C
 Case/Party: D-CAS-3-09-CV-001031-001
 Amount:      $350.00
------------------------------------
CHECK
 Check/Money Order Num: 33119
 Amt Tendered: $350.00
------------------------------------
Total Due:     $350.00
Total Tendered: $350.00
Change Amt:     $0.00


 There will be a fee of $45.00
 charged for any returned check.
```